STATE BOARD OF EDUCATION OF FLORIDA, a body corporate under the Constitution and Laws of the State of Florida, and STATE BOARD OF CONTROL, a body corporate under the laws of the State of Florida, and THE STATE OF FLORIDA v. BENJAMIN ARTHUR BOURNE, also known and referred to as B. A. BOURNE.

7 So. (2nd) 838                 Division B
April 7, 1942        Rehearing Denied May 19, 1942

J. Tom Watson, Attorney General, and Paul E. Raymond, Assistant Attorney General, for appellants.

Sheppard, Clements & Woolslair, Jim C. Clement, and Phillip D. O'Connell, for appellee.

TERRELL, J.:

This is our second consideration of this case. See State Board of Education, et al., v. Bourne, 141 Fla. 303, 193 So. 62. wherein we reversed the chancellor for lack of a proper party complainant. On the going down of the mandate, the bill of complaint was amended by joining the State of Florida as a party plaintiff, some additional testimony was taken, the chancellor found for the defendant and dismissed the bill of complaint. This appeal is from the final decree.

On the merits, the questions presented on this appeal are identical with those presented in the former appeal. By stipulation of counsel, the record in this appeal is supplemented by the record in the former appeal and the briefs in this appeal are supplemented by the briefs in the former appeal.

From the bill of complaint, it appears that appellee was employed as a member of the research staff of the Everglades Experiment Station from September 15, 1930, to December 16, 1934, and was assigned to the project of developing new varieties of sugar cane. The bill also alleges that during such time, appellee discovered by asexual reproduction three new varieties of sugar cane for which he secured federal plant patents. The bill prays that appellee be required to assign his federal plant patents so secured to appellants on the theory that the three varieties of cane for which they were secured were produced while in

performance of the service he was employed by appellants to render.

In his answer to the bill of complaint, appellee alleges that he had conceived the breeding and development of said three varieties of sugar cane prior to his employment as a member of the research staff of the Everglades Agricultural Experiment Station, that said varieties of sugar cane were not discovered and developed with facilities furnished by the Everglades Agricultural Experiment Station, that the Southern Sugar Company and its successor United States Sugar Corporation, furnished said land and facilities, that appellee's contract with appellant was a general contract of employment first as assistant plant pathologist to study sugar cane diseases and later as a plant physiologist but never as a plant geneticist to study plant breeding, that appellants never indicated to him any type of cane they wanted developed, and that at the time it (contract) was executed, he had for more than a year been under contract with Southern Sugar Corporation for the specific purpose of breeding new varieties of sugar cane from whom he was receiving $90 per month and to whom he had conveyed "shop rights" in his plant patents. This was the issue on which testimony was taken and the Chancellor found the equities to be with appellee and dismissed the bill of complaint.

In this state of the pleadings, the question presented is burdened with several aspects, viz: (1) Was the contract between appellant and appellee general or specific directed to the discovery of new varieties of sugar cane? (2) Were the three varieties of cane conceived by appellee before entering into contract with appellant for work at the Everglades Agricul-

ural Experiment Station? (3) Was appellee under contract with Southern Sugar Corporation to invent new varieties of sugar cane at the time he entered into contract with appellant and if so, was such contract and compensation therefor known to appellant? (4) Were the three varieties of sugar cane for which appellee secured plant patents produced on lands and with facilities furnished by appellant or Southern Sugar Corporation and if furnished by the latter, did that materially affect the contract with appellant?

The rule is settled in this country that one may sell or farm out his inventive faculties. That is to say, if he is employed for the express purpose of using his inventive faculty in the interest of his employer, the latter is entitled to all inventions made by him in performance of the contract. This rule has been frequently stated but one of the clearest statements we have found is in Solomons v. United States, 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667, as follows:

"If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when acomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers and that which they are able to accomplish, he has sold in advance to his employer."

In United States of America v. Dubilier Condenser Corporation, 289 U. S. 178, 53 Sup. Ct. 554, 77 L. Ed. 1114, 85 A. L. R. 1488, speaking of the foregoing rule and its converse, it was said that one who succeeds during his term of service in making an invention he

was employed to make is bound to assign to his employer any patent he obtains. The reason is that he has only produced that which he was employed to do. The invention was the precise subject of the contract of employment. The very terms of the agreement necessarily are that what he was paid to produce belongs to his paymaster. Standard Parts Company v. Peck, 264 U. S. 52, 44 Sup. Ct. 239, 68 L. Ed. 560. On the other hand, if the employment be general, though it may cover a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent. Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369; Dalzell v. Dueber Watch Case Mfg. Co. 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749.

The record shows that appellee was employed annually as plant pathologist or physiologist and was assigned to project 171, having to do with cane breeding experiments. He contends that project 171 was limited to the breeding of syrup cane as distinguished from sugar cane. The evidence on this point is in conflict but the chancellor settled that question against appellants. There is no evidence that any specific varieties of cane were in mind when the contract with appellee was made nor was he instructed as to any. All we get from the contract and project statement is that he was employed among other duties to breed cane varieties which was to be done by research and experimentation that may or may not lead to invention.

The record also discloses that at the time appellee was employed by appellant, he had been employed by

United States Sugar Corporation for more than a year for the specific purpose of breeding new varieties of sugar cane which were designated by the latter, that appellant was aware of such employment, and that the three varieties of sugar cane in question were produced on land of and with the aid of facilities furnished by the United States Sugar Corporation while in their employment for that purpose. Appellee testified positively that he conceived the three varieties of cane before he was employed by appellant and his evidence was not contradicted. The evidence as a whole also shows that appellant was aware of appellee's contract with United States Sugar Corporation and the compensation they were paying him.

In United States v. Dubilier Condenser Corporation, 289 U. S. 178, 53 Sup. Ct. 554, 77 L. Ed. 114, 85 A. L. R. 1488, a majority of the Court held that in cases of this kind, the mental concept of the object, thing or material is the subject of patent and that an employment to design, devise, or construct methods of manufacture is not the equivalent of an employment to invent. The contract in this case was general as to purpose and it appears evident from appellee's conduct that he did not consider himself employed by appellant to invent new varieties of sugar cane since he promptly conveyed shop rights in his plant patents to United States Sugar Corporation when secured.

We have found no case upholding the employer's right to the patent of an employee unless the contract of employment by express terms or unequivocal inference shows that the employee was hired for the express purpose of producing the thing patented. The general relation of employer and employee gives the employer no claim on any patent secured by his em-

ployee even though the patent covers some object within the field of his employment.

The parties hereto do not controvert this rule but the evidence as to the elements of the contract is in conflict. The chancellor evidently considered the contract one of general employment and the evidence warrants that conclusion. The fact of appellee's employment by United States Sugar Corporation for the specific purpose of developing new varieties of sugar cane and the fact that appellee's contract with appellants is silent as to anything specific on this point very strongly supports the conclusion of the chancellor.

We have examined Standard Parts Co. v. Peck, supra; Dinwiddie v. The St. Louis and O'Fallon Coal Co., 64 Fed. (2nd) 303, Bonathan v. Bowmanville Furniture Company, 31 Upper Canada Queens Bench 413 (1871); Magnetic Manufacturing Company v. Dings Magnetic Separator Co. 16 Fed. (2nd) 739, 274 U. S. 740, 47 Sup. Ct. 586, 71 L. Ed. 1320, where certiorari was denied, including other cases relied on by appellants and do not find that any of them militate against this rule; in fact they all recognize it.

When an employer undertakes to establish a claim to a patent or a patentable object as against his employee who is the inventor, he must show beyond question that the employment was for that specific purpose of making the invention. If the employment was general and the invention was an incident to that, the employer cannot claim the patent.

We do not think the appellants met the requirements of the rule. The decision of the chancellor is affirmed.

Affirmed.

330

BROWN, C. J., CHAPMAN and THOMAS, JJ., concur.