406 So.2d 1176 (1981)
John R. SPEY, Blanche Wenzel, William R. Leibold, James Yealy, William J. Hord, Donald F. Elwell, Arthur J. Bogan and Marian Harris, Appellants,
v.
Hayward T. HAYES, Dee Parkton, Bob L. Echols, Michael M. Mitchell and Moe Hersh, Individually and As County Commissioners of Okaloosa County, Florida, W.C. Jones and Walton Grocery Company, Inc., Appellees.
No. PP-48.
District Court of Appeal of Florida, First District.
November 18, 1981.
Rehearing Denied November 30, 1981.
D. Michael Chesser of Selby, Chesser, Wingard, Barr & Jones, Fort Walton Beach, for appellants.
James E. Moore of Moore, Anchors & Reid, Niceville, for appellees W.C. Jones and Walton Grocery Company, Inc.
John R. Dowd, Fort Walton Beach, for appellee Okaloosa County Commissioners.
BOOTH, Judge.
This cause is before us on appeal from a final judgment denying a mandatory injunction sought by plaintiffs, appellants *1177 herein, to require removal of improvements allegedly constructed in violation of the Santa Rosa Island Protective Covenants and Restrictions. Plaintiffs, residents and leaseholders on Santa Rosa Island,[1] contended below that the improvements violated setback line (yard) requirements, were not "affiliated services" as authorized in the B2 area classification, and were constructed across lot lines without approval.
Defendants, appellees, are Walton Grocery Company, leaseholder of Lots 363 and 364; W.C. Jones, primary shareholder of Walton Grocery Company; and the Okaloosa County Commission. The subject lots are located within the B2 zone as set forth in the protective covenants and subject to the following restrictions:
Zone B2  Apartment, Hotel Court, and Hotel Areas 
... .

Uses  Within any B2, Apartment, Hotel Courts and Hotels areas, no building, structure or premises shall be used or arranged or designed to be used in any part except for one or more of the following uses in addition to the uses permitted in B1 Private Residential Area:
(1) Duplex residence-apartment
(2) Hotels
(3) Tourist or hotel courts
(4) Apartment house
(5) Affiliated services built in conjunction with, and within the same plan as (2), (3) and (4) above, such services being as newsstands, barber shops, beauty shops, dining rooms, drug shop, rental boat basins, delicatessens, filling stations, variety shops, clothing shops, flower shops and other shops as may be deemed necessary and proper by the Authority and the Project Architect, from time to time, to serve the needs of tourists and vacationists. Exterior display or advertising signs for such facilities shall be in accordance with the lease form for the property in question. In no instance shall there be more than one sign per project.
The improvements built by appellees, and subject to the dispute herein, are: (1) a seven-eleven-type convenience store, with gas pumps, located on Lot 363, completed in April of 1976 as a free-standing structure; (2) a shopping area constructed in 1978 on Lot 364, consisting of a gift shop and a combination beach supply, gift shop and pinball alley; and (3) several efficiency apartments added on top of the commercial strip. The entire development contains approximately 9,000 square feet. The ground-level, devoted to commercial use, occupies 7,000 square feet; the upper level residential-type occupies 2,000 square feet. There are four separate signs identifying the various commercial establishments on the first floor.
In December, 1975, the County Commission purported to amend the covenants applicable to Lots 363 and 364 by deleting the "affiliated service" requirement, quoted above, so as to allow the construction of a free-standing commercial use and issued building permits for the construction of the convenience store. Litigation by Santa Rosa leaseholders to prevent construction of the convenience store was timely commenced;[2] but the construction continued and the convenience store was completed in April of 1976. That suit culminated in the opinion of this court rendered August 11, 1978, in Okaloosa Island Leaseholders' Association v. Hayes, 362 So.2d 101 (Fla. 1st DCA 1978), holding that the Board of County Commissioners could not amend the covenants in contravention of the valid contract rights of leaseholders and that the Commission had no greater powers than its predecessor, the Island Authority. The lower court's decision, that the covenants and restrictions, following the enactment of Chapter 75-456, Laws of Florida, become effective as a zoning ordinance, was reversed. This court held that the restrictive *1178 covenants could not be revised or amended without the written consent of the majority of the lessees in the area, as provided in the restrictive covenants.
During the pendency of that prior appeal, appellee built, in 1978, an additional shopping facility, adding 5,000 square feet for commercial use which was physically attached to the existing 2,400-square-foot convenience store on the adjoining lot. Some 2,000 square feet of residential area was constructed on the eastern end of the roof of the shopping facility.
Following rendition of the decision in Okaloosa Island Leaseholders' Association v. Hayes, supra, appellants filed the instant suit seeking injunctive relief to enforce the leaseholders' contract rights. A hearing was held, and the trial court entered the order herein sought to be reviewed, in pertinent part as follows:
1. The improvements constructed on Lots 363 and 364, Santa Rosa Island Subdivision, Okaloosa County, Florida, do not violate the "yard" requirements (set-back lines) as set forth in Part D of the Protective Covenants. Subject building "fronts" on Santa Rosa Boulevard and is at least 30 feet from said street line. The building is at least 15 feet from Porpoise (side yard) and there is no "rear yard" requirement in the Protective Covenants applicable to the building as it relates to Nautilus Court.
2. Said improvements are now within the enumerated, affiliated services as set forth in Part D, and the County Commission had deemed such construction to be necessary to serve the needs of the tourists and vacationists.
Therefore, the trial court found that, even without the amendment to the covenants, the improvement met the applicable restrictions.
The question now before this court is whether the trial court erred in finding that appellees' improvements did not violate the B2 classification or the setback and yard requirements applicable to the property under the covenants. We accept the trial court's determination that no violation of the yard or setback requirements occurred. See, Orange Gardens Civic Association v. Harris, 382 So.2d 1340 (Fla. 5th DCA 1980). However, as to the "affiliated service" requirement, we must reverse the judgment below.
The parties assert conflicting property rights: appellants seek to preserve and maintain the value of their respective leaseholds by requiring appellees' compliance with covenants governing the use of appellees' property, while appellees claim the right to make commercial use of their lots.
Covenants restricting free use of private property must be strictly construed in favor of the property owner. Washingtonian Apartment Hotel Company v. Schneider, 75 So.2d 907 (Fla. 1954). However, where the intent of the parties, as shown by the document as a whole, is reasonably clear, such restrictions will be enforced, including the removal or alteration of the offending structures. Barrett v. Leiher, 355 So.2d 222 (Fla. 2d DCA 1978);[3]Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127 (1925); Daniel v. May, 143 So.2d 536, 538 (Fla. 2d DCA 1962); 20 Am.Jur.2d Covenants, Conditions and Restrictions, §§ 185-87.
In the instant case, the protective covenants plainly indicate that B2 areas are intended to be primarily residential with subsidiary or "affiliated" commercial use permitted. An affiliated service is one which is dependent on, and provided in connection with, a primary or predominant use of the property. Commercial services and facilities which are associated with and incidental *1179 to the residential use must be of a size and nature to serve tenants of the residential facility, although general public access need not be denied.[4] The interpretation urged by appellees would eliminate the distinction between Zones B2 and B3[5] and allow the construction of a shopping center in a B2 zone, provided a token apartment area was annexed.
In the instant case, the relative size of the residential and the commercial areas, the sequence of events leading to the construction of the various portions of the development, as well as the actual use of the commercial portions and lack of use of the residential portion are evidence that the residential use is far from the predominant or primary use of the property. Appellee Jones testified that the construction on the two lots was to be "a commercial building" and that the apartments were added so as to obtain approval for the commercial building, as follows:
Q Is there any question but that the primary intention of these plans and of the structure that is located on those two lots is to be a commercial building?
[Jones] A It was to be a commercial building, yes.
Q And that the apartments were added merely to attempt to comply with those covenants?
A Added for that purpose only? When it was brought to my attention that we would have to have apartments in connection with the commercial building, whatever that time was, not remembering dates, then I instructed the builder to have the plans drawn up.
... .
Q And, you submitted the plans for the apartments because you felt that was necessary to get the commercial building in place?
A To the best of my knowledge that is correct.
In addition, the owner testified that no exterior sign identified the apartments and that they had never been occupied or advertised for rent.
The trial court, in the final judgment herein sought to be reviewed, ruled:
The evidence reflects that these improvements were constructed during that period of time when interpretation of the protective covenants and restrictions were the subject of hotly contested litigation in the courts of this county, which litigation had been previously initiated as the result of the commencement of this construction. Continued development was certainly with actual notice that it was doing so at its own peril. [emphasis supplied]
The foregoing determination by the trial court supports appellants' right to equitable relief. However, the relief to be granted was not an issue reached below because of the trial court's ruling that the covenants were not violated.
We hold that appellants are entitled to relief in this case. However, the relief to be afforded involves factual matters, equitable considerations and the exercise of judicial discretion. Obviously, something less than the destruction of the improvements can be required and a reasonable time for conversion to permitted uses allowed.
Accordingly, the judgment below is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent herewith.
ROBERT P. SMITH, Jr., C.J., and SHAW, J., concur.
NOTES
[1] Most, if not all, of the privately owned property on the Island is held under long-term leases. See, Straughn v. Camp, 293 So.2d 689 (Fla. 1974), for history and background of Santa Rosa Island.
[2] Litigation was commenced January 6, 1976, within ten days after commencement of construction on Lot 363.
[3] Barrett v. Leiher, 355 So.2d 222, 225 (Fla. 2d DCA 1978):

Florida adheres to the general rule that a reasonable, unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms. If it is necessary to construe a somewhat ambiguous term, the intent of the parties as to the evil sought to be avoided expressed by the covenants as a whole will be determinative. Only where intent cannot be ascertained will the covenant not be enforced. [citations omitted]
[4] See, City of Miami Beach v. Uchitel, 305 So.2d 281 (Fla.3d DCA 1974); see, generally, 101 C.J.S. § 176, 101A C.J.S. §§ 148, 149.
[5] The covenants and restrictions set up four classifications, to-wit:

Zone B1  Private Residential Areas;
Zone B2  Apartment, Hotel Court, and Hotel Areas;
Zone B3  Light Commercial and Concession Areas; and
Zone B4  Parks, Beaches and Freeway Areas.