435 So.2d 868 (1983)
Lawrence K. HULL, Richard G. Peterson and Shirley L. Peterson, His Wife; Richard D. Polley; and Richard W. Green, Appellants/Cross-Appellees,
v.
MIAMI SHORES VILLAGE and Edward A. McCarthy, As Archbishop of the Archdiocese of Miami, His Successors in Office, Appellees/Cross-Appellants.
No. 82-907.
District Court of Appeal of Florida, Third District.
July 5, 1983.
Rehearing Denied August 24, 1983.
Williams, Salomon, Kanner, Damian, Weissler & Brooks, and Gary Brooks, Miami, for appellants/cross-appellees.
*869 William F. Fann, Jr., Miami Shores, McDermott, Will & Emery and J. Michael Fitzgerald, Jr., Miami, for appellees/cross-appellants.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
FERGUSON, Judge.
Appellants commenced this action on a complaint for a declaration that the use of certain property in Miami Shores Village for administrative offices of the Archdiocese is in conflict with the zoning code, and for an injunction prohibiting construction of the administrative building.[1]
Both parties filed motions for summary judgment stipulating that there were no disputed issues of material facts and that the matter should be disposed of by summary judgment on the point of law.
Appellants, all residents of Miami Shores Village, reside in the immediate vicinity of the property owned by the Archdiocese. Their homes, and the Archidocese's land, are located within a district designated for single-family residential use by Miami Shores Village Ordinance No. 270 and a Schedule of Regulations which is part of the ordinance. Article I, Section 101 of the ordinance is entitled "Purposes". It sets forth the intent of the council in enacting the comprehensive zoning plan:
The regulations ... constitute a comprehensive zoning plan that ... recognizes the predominantly one-family residential character of the Village, with all other uses of land either being incidental and convenient thereto or, if existing as a result of extraneous factors, being secondary thereto. It is the intention of this ordinance to preserve and enhance the one-family residential character of the Village, making provision for such other uses as will contribute to this end, prohibiting such uses as would be in conflict therewith, and strictly limiting the intensity and extent of permitted uses the intensification and expansion of which would detract from the predominantly one-family residential character of the Village... .
Appellees rely upon a provision in the Schedule of Regulations which permits use of the land for an ancillary purpose consistent with the "one-family dwelling" characteristic of the community:
Churches, other places of worship, Sunday school buildings and uses directly related thereto.
We are called upon to review the trial court's determination that the Archdiocese's administrative building is directly related to a place of worship and not inconsistent with the one-family dwelling characteristic of the Village as a matter of law.
In late 1981, the Archdiocese announced plans to construct a "Pastoral Center" which would serve primarily as a facility for the transaction of administrative affairs of the Archdiocese. A use analysis produced by the Archdiocese reflected that approximately eighty percent of the structure would be utilized strictly for administrative services to the entire Archdiocese, serving 135 parishes from Stuart, Florida on the north, to Key West on the south and Naples on the west; the remaining twenty percent of the structure would be utilized as a new parish church.
The administrative services to be provided at the center were to include: evaluation of religious services conducted within the Archdiocese; administration and coordination of services provided by the Catholic Service Bureau, a social service agency; planning, coordination and evaluation of the Archdiocese's educational system; publication of the Archdiocese's newspaper; and administration of fund-raising activities by its office of development. As *870 planned, the office would employ approximately 114 people, ninety of whom would be lay people. Parking spaces were planned to accommodate 180 vehicles. Less than one percent of the administrative services provided at the center would be for the benefit of parishioners of the church located on the property.
The terms, "churches", "places of worship" and "Sunday school buildings", as used in the ordinance, do not, in their ordinary and usual meaning, include buildings used primarily for administration. The question then is whether the administrative building was intended to have a use directly related to "[c]hurches, other places of worship, [or] Sunday school buildings" within the meaning which those terms must be given when considered in the context of the entire ordinance.
The single-family dwelling characteristic is the dominant theme throughout the zoning ordinance. The only harmonious interpretation that can be given "churches, other places of worship, [or] Sunday school buildings", as a permitted ancillary use, is that the activities conducted at such facilities must be, at least primarily, for the benefit of those persons who attend, or are members of, the congregation using those facilities. Normally, that would be the residents of nearby single-family homes. The construction of the ordinance which appellees advance  that as long as the administrative offices bear some relationship to a community church, it makes no difference that the offices will serve 135 other parishes and a social service agency which have no connection to the Village  would circumvent and undermine its expressed legislative intent.
We have been presented no case directly on point but appellants argue persuasively by analogy. First, they cite City of Miami Beach v. Uchitel, 305 So.2d 281 (Fla. 3d DCA 1974). There the city had enacted a zoning ordinance which permitted a certain "accessory use" restaurant license. Under an accessory use license, the owner could operate the restaurant for the primary use and convenience of tenants, but could not operate for "commercial use". This court held that the owner, by television and newspaper advertising addressed to other than tenants, had transformed his "accessory use" license into a primarily "commercial use", in violation of the city ordinance. See also International Company, Inc. v. City of Miami Beach, 90 So.2d 906 (Fla. 1956) (where coffee shops and lounges operated in hotel under accessory use permit, it was violation to erect a prominent sign outside the hotel building which had the effect of attracting persons who were not guests of the hotel).
In the more analogous case of Spey v. Hayes, 406 So.2d 1176 (Fla. 1st DCA 1981), residents and leaseholders on Santa Rosa Island sought a mandatory injunction to require removal of improvements allegedly constructed in violation of the Island's protective covenants and restrictions. The purpose of the restrictions in question was to preserve the B-2 zoning (covering apartment, hotel court and hotel areas) as primarily residential with commercial use limited to that which is dependent on, and provided in connection with, the primary or predominant use of the property. The protective covenants gave a general description of affiliated commercial facilities and services which would be permitted in the zone, and stated that such services could be built "as may be deemed necessary and proper ... to serve the needs of tourists and vacationers." The defendants constructed (1) a "seven-eleven-type" convenience store, (2) a separate shopping center with a bowling alley, and (3) several efficiency apartments added on top of the commercial strip. Of the total 9,000 square feet of improvements, only 2,000 square feet was for residential living.
The appellate court in Spey noted that where the commercial services and facilities must be associated with and incidental to the residential use, they must be of such a size and nature as to serve mainly tenants of the residential facility, although not to the exclusion of the general public. In reversing a judgment for the defendants, the court held that the relative size of the residential and commercial areas, the sequence *871 of events leading to construction of the various portions of the development, as well as the actual use of the commercial portions and lack of use of the residential portion, was evidence that the residential use was far from the predominant or primary use of the property.
Likewise, the Pastoral Center in this case serves primarily the business of the South Florida Archdiocese with little direct relationship to any Village church. But for the addition of the church, which is a comparatively insignificant part of the entire structure, the building would not remotely qualify as a use ancillary to the single-family residences in the community.
A trial judge's findings of fact and conclusions of law come to the appellate court with a presumption of correctness and will not be disturbed unless totally unsupported by competent substantial evidence. Laufer v. Norma Fashions, Inc., 418 So.2d 437 (Fla. 3d DCA 1982). However, if the trial court's decision is manifestly against the weight of the evidence or is contrary to the legal effect of the evidence, it becomes the duty of the appellate court to reverse such a decision. Zinger v. Gattis, 382 So.2d 379 (Fla. 5th DCA 1980) and cases therein cited. There is no competent evidence in the record of this case to support the trial court's conclusion that the structure did not violate the zoning ordinance.
By cross-appeal the Archdiocese contends that the action for declaratory and injunctive relief, filed some six months after the Village council had approved the plans for construction of the Pastoral Center, was a jurisdictionally defective attempt to secure an untimely and improper de novo review of the council action. We do not pass on the propriety of using the declaratory judgment proceeding in this case because, on review of the record and the briefs, it is clear that the question was never presented to the trial court. National Automobile Insurance Association v. Brumit, 98 So.2d 330 (Fla. 1957). Furthermore, from the abbreviated record presented, we cannot determine to a certainty that there were factual impediments to the court's exercise of subject-matter jurisdiction.
Reversed and remanded for further proceedings.[2]
NOTES
[1] We are regularly called upon to review cases questioning the applicability of municipal zoning ordinances to religious groups. Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach, 82 So.2d 880 (Fla. 1955); Grosz v. State, 381 So.2d 316 (Fla. 3d DCA 1980); Town of Hialeah Gardens v. Hebraica Community Center, Inc., 309 So.2d 212 (Fla. 3d DCA 1975); City of Miami Beach v. Greater Miami Hebrew Academy, 108 So.2d 50 (Fla. 3d DCA 1958), cert. denied, 113 So.2d 229 (Fla. 1959).
[2] It is suggested from the record and in oral argument that construction of the building was completed during the pendency of this litigation. That fact does not preclude the granting of some equitable relief if injury can be proved. Spey v. Hayes, 406 So.2d 1176, 1179 (Fla. 1st DCA 1981).