501 So.2d 667 (1987)
RANDY INTERNATIONAL, LTD., Appellant,
v.
AMERICAN EXCESS CORP., Appellee.
No. 86-169.
District Court of Appeal of Florida, Third District.
January 13, 1987.
Rehearing Denied February 18, 1987.
*668 Thomas G. Sherman, Coral Gables, for appellant.
Gerald Silverman, Miami, for appellee.
Before HENDRY, FERGUSON and JORGENSON, JJ.
HENDRY, Judge.
Defendant Randy International, Ltd. (Randy) seeks review of orders awarding damages in favor of plaintiff American Excess Corporation (American Excess) and taxing costs against Randy pursuant to a final judgment entered in a non-jury trial. For reasons more fully developed below, we reverse.
The following facts are undisputed. American Excess paid Randy, a freight forwarder, $7,480 to cause certain goods to be shipped to Cairo, Egypt. Randy prepared a bill of lading and paid Cari-Cargo International, Inc. (Cari-Cargo)[1] $7,038.50 to handle the shipment. Cari-Cargo in turn placed the goods on a steamship owned by Costa Lines which was bound for Cairo. However, because Cari-Cargo failed to pay the accompanying freight charges, Costa Lines refused to release the goods to American Excess' customer in Egypt upon arrival. Consequently, American Excess was forced to pay the freight charges, and, having made a double payment for a single shipment, it instituted the instant lawsuit to recover damages from Randy.[2]
American Excess' claim is grounded upon an alleged oral contract whereby Randy agreed to take total responsibility for *669 the shipment. The trial court's findings of fact are stated as follows in the final judgment:
1. Plaintiff entered into an oral contract with Defendant for the Defendant to find someone to ship goods from Miami to Egypt.
2. Defendant was the procuring source for the corporation which did the shipping.
3. Defendant charged a fee of 5% for the services rendered.
4. Plaintiff paid Defendant $7,480.00, [out] of which Defendant deducted its fee and costs.
5. Third party Defendant, CARI-CARGO INTERNATIONAL, INC., failed to pay for the shipping and Plaintiff was required to pay COSTA LINES $6,630.00 in order for the goods to be released.
6. That between the two parties as to who should pay for the loss it should be the person who secured the services of the shipping agency.
Randy's position, both at trial and on appeal, is that it agreed to act merely as a freight forwarder and thus fulfilled all its obligations regarding the shipment in question. It denies having agreed to ship the goods for American Excess, and argues that American Excess failed to prove that such an agreement existed.
Having carefully considered the record, briefs and arguments of counsel, we find Randy's contentions meritorious.
The duties of freight forwarders have been described as follows:
Most American exporters use the services of ocean freight forwarders who, in essence, act as export departments for their shipper clients. An exporter who ships goods abroad customarily consigns the merchandise to a forwarder who then makes all arrangements for dispatch to a foreign port. Thus, the forwarder will secure cargo space with a steamship company, give advice on governmental licensing requirements, proper port of exit and letter of credit intricacies, and arrange to have the cargo reach seaboard in time to meet the designated vessel. The forwarder also prepares required shipping documents, including the dock receipt, delivery order, bill of lading, export declaration and the consular invoice required on shipments to certain countries.
New York Foreign Freight Forwarders & Brokers Ass'n v. Federal Maritime Comm'n, 337 F.2d 289, 292 (2d Cir.1964), cert. denied, 380 U.S. 910, 914, 85 S.Ct. 893, 902, 13 L.Ed.2d 797, 800 (1965). See also Zima Corp. v. M.V. Roman Pazinski, 493 F. Supp. 268, 272 (S.D.N.Y. 1980) (describing a forwarder as "one who arranges for a carrier to transport goods, as well as for other miscellaneous matters associated with the shipment of goods such as customs clearance and licensing"). Accordingly, a freight forwarder's liability is limited to that for damages arising from its own negligence, including negligence in choosing a carrier.[3] However, where a forwarder contracts to deliver goods to their destination, instead of merely arranging for their transportation, it becomes liable as a common carrier for loss or damage to the goods, whether the fault lies with the forwarder or not. See Chicago, Milwaukee, St. Paul & Pacific R. Co. v. Acme Fast Freight, Inc., 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817 (1949); Aquascutum of London v. S.S. AMERICAN CHAMPION, 426 F.2d 205 (2d Cir.1970); Zima Corp. v. M.V. Roman Pazinski, 493 F. Supp. at 274; J.C. Penney Co. v. American Express Co., 102 F. Supp. 742 (S.D.N.Y. 1951), aff'd, 201 F.2d 846 (2d Cir.1953).
In determining the nature of Randy's undertaking, our inquiry focuses upon (1) the way the parties' obligation is expressed in documents pertaining to the agreement; (2) the history of dealings between the parties; (3) issuance of a bill of lading; and (4) how the party made its profit. Zima Corp. v. M.V. Roman Pazinski, 493 F. Supp. at 273. Having applied the foregoing factors to the instant transaction, we are led to the inescapable conclusion that the trial court *670 erred in finding that Randy entered into a contract to find someone to ship American Excess' goods.
The bill of lading is the written document which governs the instant dispute. See 70 Am.Jur.2d Shipping § 458 (1973) (defining a bill of lading as a written acknowledgment by the carrier that he has received the goods described from the shipper, to be transported and delivered to the named destination and parties). The plain language of the bill of lading, which was provided by Cari-Cargo, designates Randy as the forwarding agent, and Cari-Cargo as the carrier.[4] In Zima Corp. v. M.V. Roman Pazinski, 493 F. Supp. at 274, on the issue of whether a defendant who had arranged to ship certain goods, which were ultimately lost, acted as a carrier, the court noted: "Moreover, even if it is assumed that the document's heading and form as a bill of lading creates a sufficient ambiguity to warrant examination of extrinsic evidence, the extrinsic evidence is consistent with defendant's assumption of liability as a freight forwarder only." The same holds true in the instant case. The record is devoid of competent substantial evidence of unusual dealings between the parties, or fee arrangements inconsistent with Randy's position. In fact, the overwhelming weight of the evidence, taken as a whole, indicates that American Excess contracted with and dealt with Randy as a freight forwarder only, and there is simply no record evidence of any activity on the part of either party to support the existence of the oral agreement alleged.
A trial judge's findings of fact and conclusions of law come to this court with a presumption of correctness and will not be disturbed unless totally unsupported by competent substantial evidence. Hull v. Miami Shores Village, 435 So.2d 868 (Fla. 3d DCA 1983); Laufer v. Norma Fashions, Inc., 418 So.2d 437 (Fla. 3d DCA 1982). However, if a trial court's decision is manifestly against the weight of the evidence, contrary to the legal effect of the evidence, or unsupported by competent substantial evidence, it becomes our duty to reverse. Design Eng'g Corp. of Am. v. Pan Aviation, Inc., 448 So.2d 1112 (Fla. 3d DCA 1984); Hull v. Miami Shores Village, 435 So.2d 868; Oceanic Int'l Corp. v. Lantana Boatyard, 402 So.2d 507 (Fla. 4th DCA 1981); Zinger v. Gattis, 382 So.2d 379 (Fla. 5th DCA 1980).
Here, because there is no competent substantial evidence to support the trial court's conclusion that Randy orally agreed to act as something beyond a mere freight forwarder, we reverse the final judgments awarding damages in favor of American Excess and taxing costs against Randy.
Reversed.
NOTES
[1] Cari-Cargo is a non-vessel operating common carrier (NVOCC). An NVOCC consolidates small lots into a single container for various small shippers, and then tenders the container load to an equipment-owning carrier for the actual physical transportation of the goods. Fireman's Fund Am. Ins. Cos. v. Puerto Rican Forwarding Co., 492 F.2d 1294, 1295 (1st Cir.1974). As is customary, Cari-Cargo issued the bill of lading and, rather than the actual water carrier (Costa Lines), is responsible for the through transportation of the goods. See Fireman's Fund Am. Ins. Cos., 492 F.2d at 1295.
[2] Randy then filed a third-party complaint against Cari-Cargo, alleging that Cari-Cargo, rather than it (Randy), was liable to American Excess for double payment of the freight. Because Cari-Cargo failed to file a responsive pleading, a default judgment was entered against it. Cari-Cargo is not a party to this appeal.
[3] American Excess neither alleged nor proved that Randy was negligent.
[4] In its initial brief, Randy correctly points out that the rule barring parol or extrinsic evidence to vary unambiguous written contracts would apply in the instant case. See 13 Am.Jur.2d Carriers § 294 (1964).