803 So.2d 869 (2002)
The CITY OF COCOA, Florida, Appellant,
v.
Glynn LEFFLER, Gary Heller, et al., Appellees.
No. 5D01-1141.
District Court of Appeal of Florida, Fifth District.
January 4, 2002.
*870 Usher L. Brown and Alfred Truesdell of Brown, Ward, Salzman & Weiss, P.A., Orlando, for Appellant.
Patrick F. Roche of Frese, Nash & Hansen, P.A., Melbourne, for Appellees.
PLEUS, J.
This case involves a dispute over the ownership of patent rights between an employer and an employee. The City of Cocoa ("the City") appeals a final judgment after a non jury trial in which the trial court found that the City did not own patent rights for improvements to the City's water treatment plant invented by a team of City employees. Because there was competent substantial evidence to support the trial court's findings, we affirm.
The City draws water from the Florida aquifer, treats it, and sells it to its residents. During the treatment process, the water is pumped to the Weewahootee Pre-treatment Plant where hydrogen sulfide is removed. In the 1980's, the city began planning for the construction of a replacement plant. The city contracted with CMH2 Hill, an engineering firm, to produce a preliminary design for the new plant. The City asked the engineering firm to recommend ways to improve operating efficiency and expand capacity. In particular, the City wanted to increase the amount of hydrogen sulfide removed from the water. Hill designed a plant utilizing aeration, one of two known methods, to remove hydrogen sulfide.
The City was dissatisfied with Hill's plan because the system would be expensive to construct and difficult to maintain. Consequently, it created an in-house design team *871 composed of seven employees, including Glynn Leffler, to improve upon the proposed design. The team succeeded in designing a less costly and more efficient system. In the process, the team made two discoveries. During initial testing, a system malfunction resulted in a build up of bacteria. Upon observing that hydrogen sulfide was still being removed by the bacteria, the team experimented with, and ultimately invented, a bacterial-based system for removing hydrogen sulfide. The invention removed almost 100% of the hydrogen sulfide from the water. Additionally, the team found a more efficient way to clean the water treatment tanks.
Toward the end of their efforts, the team members held a meeting and discussed patenting these inventions and paying for the patent application with their own money. Following the meeting, team leader Carl Larabee informed his supervisor, Bill Stephenson, that the team was interested in patenting the inventions. Stephenson took the proposal to the City Council which decided that the city would pay for the patent application but the team members would receive no compensation from the City for their invention of the bacterial filtration process. The patent was sought and issued in the name of the team members and not the City, as required under Federal patent law. At the City's request, four of the seven team members assigned their patent rights to the City. When the remaining three members, Leffler, Heller and Nairn, refused to assign their rights[1], the City filed suit against them and K.L.H. Environmental, Inc.[2]
In count I of its complaint, the City sought a declaration that it was the owner of the patent rights. In count II, the City sought an injunction to require the remaining team members to assign their patent rights to the City. The City filed a motion for temporary injunction, which was denied after an evidentiary hearing. This court affirmed that decision in City of Cocoa v. Leffler, 741 So.2d 612 (Fla. 5th DCA 1999) ("Leffler I").
Subsequently, Leffler and K.L.H. filed a motion for partial summary judgment, which was granted. We reversed the summary judgment in City of Cocoa v. Leffler, 762 So.2d 1052 (Fla. 5th DCA 2000) ("Leffler II"), finding disputed issues of material fact as to whether employees were assigned to the team for the specific purpose of inventing a new water treatment process.
Subsequently, Leffler's and Heller's cases were bifurcated for trial. Heller obtained a jury verdict in his favor, which we affirmed in City of Cocoa v. Leffler, 791 So.2d 487 (Fla. 5th DCA 2001). Leffler's case proceeded to non-jury trial.
At trial, the evidence remained conflicting. The City's main witness was team leader Carl Larabee. Larabee testified that the in-house team's purpose was to design a simpler, cheaper water treatment plant than the Hill design. Everyone on the team was employed by the City. None of the team members spent their own money on materials for the project, and the project was completed primarily with City funds and materials. Some of the packing materials were donated by packing companies who wished to have their materials considered in the final product.
Significantly, Larrabee never told team members to invent new technology and never anticipated that anything would be *872 invented. Rather, the goal was to improve upon a previously submitted plan by designing a more efficient and less costly plan which could be done without inventing a new process. He never anticipated or expected that anything would be invented in the design process.
For the defense, William Nairn, an engineer and team member, testified that neither he nor the team were assigned the task of inventing. Instead, they were asked to design a better water treatment plant. He defined the term "design" as taking the "standards and methods that are currently in use and applying them to a particular problem." Nairn never anticipated or expected to invent anything. He agreed that the discovery of a new water treatment process was a surprise.
Glynn Leffler testified that he volunteered to join the design team. He was not given any specific tasks. Instead, Leffler composed a memo to his boss, Gary Heller, defining three goals on which he proposed to work: (1) define the depth of packing required for the stripping tower, (2) evaluate the possible benefits of installing a bubbler system, and (3) evaluate the possibility of eliminating the need for aeration of raw water by installing an air diffuser in the ground storage tanks. Heller approved these goals, which did not require Leffler to invent anything. Leffler agreed with other team members that the discoveries leading to the inventions were a surprise. Leffler also testified that he often worked on this project beyond normal working hours, for which he was not compensated. The majority of the parts and materials used in the testing were provided by sources outside the City. Finally, Leffler testified that he objected to the City paying for the patent.
The trial court found that Leffler was not hired to invent a new technology or method. The team was never told to invent, and no one anticipated or expected to invent anything. Leffler had no history of inventing and the City did not expect him to invent anything. Instead, the goal of the team was to design a simpler, cheaper system. Finally, the court found no conflict of interest because both parties benefitted from the invention.
A trial court's fact findings and conclusions of law are presumed correct and will not be reversed unless the court's decision is manifestly against the weight of the evidence, contrary to the legal effect of the evidence, or unsupported by competent substantial evidence. See Randy Int'l, Ltd. v. American Excess Corp., 501 So.2d 667 (Fla. 3d DCA 1987).
The City argues that the trial court applied an incorrect rule of law: that the City must show "beyond question that the employment was for the specific purpose of making the invention." The City acknowledges that the trial court adopted this standard from our opinion in Leffler II, quoting from State Board of Education v. Bourne, 150 Fla. 323, 7 So.2d 838 (Fla. 1942). However, the City contends that the rule in Bourne was later clarified by State v. Neal, 152 Fla. 582, 12 So.2d 590 (1943).
The leading Florida cases on this issue are Bourne and Neal. Bourne involved the state's claim of patent rights to three new varieties of sugar cane invented by one of its employees. The Florida Supreme Court stated that an employer seeking patent rights to an employee's invention must prove that:
[t]he contract of employment by express terms or unequivocal inference shows that the employee was hired for the express purpose of producing the thing patented.
Bourne, 7 So.2d at 840. The court analyzed the employment contract at issue *873 and found that the employee, among other duties, was hired to "develop cane varieties which was to be done by research and experimentation that may or may not lead to invention." It held that the state failed to "show beyond question that the employment was for that specific purpose of making the invention." Id. at 841.
In Neal, the supreme court applied the same rule to a different set of facts and concluded that the state owned patent rights to an employee's invention. The court found that although the employment contract was general at first, the employee was subsequently assigned to a specific project to develop a method by which dried citrus waste could be converted into dairy feed. 12 So.2d 593. Although there was no express contract to invent the process, the circumstances showed an "unequivocal inference" that the employee's job was for that express purpose. Id. at 592. The court found the following factors significant: (1) the employee was paid by the state from a special federal fund limited to investigations and experiments regarding agricultural products, (2) the employee devoted a majority of his time to the project, (3) the employee used state facilities, (4) the state paid all expenses in obtaining the patents, (5) the employee was given the specific task of developing a new method to dry citrus waste, (6) the employee at first attempted to obtain the patent in the name of the employer, and (7) the parties' correspondence conclusively showed that the purpose of the project was to create a new method. Id.
In the instant case, there was no evidence of an express contract to invent. Thus, under Bourne and Neal, the City was required to prove an "unequivocal inference" that Leffler was given the specific task of producing the thing invented. The evidence did not show such an inference. Unlike Neal, Leffler was not paid from a special fund reserved for fostering invention. He did not spend a majority of his time on the project. Although Leffler used the City's facilities for the project, he also used materials obtained from other sources. Although the City paid for the patent application, it did so despite Leffler and the other employee's desire to pay for it themselves. The correspondence in this case shows that Leffler set his own goals, none involving invention. Most importantly, Leffler was never given the specific task of inventing. All of the witnesses agreed that Leffler was not asked or instructed to invent anything and that the inventions were a surprise. Therefore, we conclude that the trial court's fact findings were supported by competent substantial evidence with a correct application of the standards enunciated in Bourne and Neal.
The City also argues that Leffler created a conflict of interest by allowing "his pursuit of individual gain to overtake his obligations to the city and its taxpayers" by pursuing his patent claim to the point of "forcing the City" to sue him at great expense to its taxpayers, holding "clandestine meetings" with other team members at his home, and using his official position and his access to the City's resources for personal gain. We disagree.
First, the City sued Leffler, not vice versa. It cannot now claim that Leffler had a conflict of interest simply because he defended his property rights in this lawsuit. Second, the City failed to show how Leffler's meetings with other group members at his home caused him to disregard his public duties. Third, there is no evidence that Leffler disregarded a public duty or interest in favor of private gain. Although Leffler and the other employees invented the new technology while working for the City, they did not do it for personal gain. The evidence was overwhelming that the invention was an unanticipated *874 result of a system malfunction. 762 So.2d at 1053.
The City ignores the trial court's finding that no conflict of interest existed because the invention was mutually beneficial. It is undisputed that the City received a benefit by obtaining a simpler, cheaper and more effective waste treatment method. Therefore, we conclude that there was competent substantial evidence to support the trial court's finding that Leffler did not have a conflict of interest.
The City also argues that Leffler's failure to assign his patent rights to the City constitutes a conflict of interest in violation of Chapter 112, Florida Statutes. Chapter 112 sets out a procedure for dealing with alleged violations of that chapter. Section 112.324, Florida Statutes, requires complaints to be filed with, investigated by, and ultimately ruled upon by the Commission on Ethics. Section 112.3241, Florida Statutes, provides for appellate review of the commission's decisions. In this case, the City appealed an order of the circuit court, not the commission. There is no evidence in the record showing that the City filed a complaint with the commission or that the commission took action on a complaint. Thus, we decline to address this issue, except to note that section 112.316, Florida Statutes, states:
It is not the intent of this part, nor shall it be construed, to prevent any officer or employee of a state agency or county, city, or other political subdivision of the state or any legislator or legislative employee from accepting other employment or following any pursuit which does not interfere with the full and faithful discharge by such officer, employee, legislator, or legislative employee of his or her duties to the state or the county, city, or other political subdivision of the state involved.
The City cites Commission on Ethics Opinion 89-1 for the proposition that the Commission "has recognized the potential conflict of interest for public employees who seek patents for inventions for the government employers." While this may be true, the opinion cites section 112.316, Florida Statutes, for the proposition that "the Code of Ethics should not be interpreted to deprive [an employee] of legal rights ... as long as the exercise of those rights will not impede the full and faithful discharge" of the "employee's public duties." Id.
AFFIRMED.
SHARP, W., and GRIFFIN, JJ., concur.
NOTES
[1] Nairn assigned his patent rights to the City after this litigation began.
[2] The City sued K.L.H. because Leffler and Heller were negotiating with them to market the new technology to other municipalities.