NATIONAL DEVELOPMENT COMPANY *vs.* ELLEN GRAY & another, administrators, & another.

Essex.    March 6, 1944. — May 31, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Invention. Contract,* Of employment. *Agency,* Agent's liability to principal. *Estoppel. Equity Pleading and Practice,* Decree.

Statement by RONAN, J., as to the ownership of inventions made by employees during the period of their employment.

The facts that, although an employee was under no express contract to assign to his employer rights to inventions made by him during his employment and was not expressly employed as an inventor and it was on his own time and at his home that he made drawings of an improvement invented by him during his employment upon a patented machine of the employer, but it nevertheless was understood that part of the employee's duties was to study improvements and developments for the employer's machine and that inventions might result from such work, and the employee knew that the improvement so invented by him, if perfected and patented by a competitor, might destroy the employer's business, justified a conclusion that the employee was under

an implied obligation to assign to the employer a patent which he obtained upon such improvement after his employment had terminated.

From findings that during his employment an employee had conceived an idea for an improvement upon a patented machine of his employer, that in the three months before leaving his employment he had made a drawing and had shown and explained it to others, including a patent attorney and one who became willing to invest money in a project for development of the improvement, and that, when he left his employment, the idea of the improvement "was sufficiently definite in his mind and in the minds of others that it was workable and practical and capable of development to make it possible to secure financial backing for its development," a conclusion was warranted that the employee had invented the improvement before he left his employment.

The mere facts, that employees of a corporation, following an application by a former employee as inventor for a patent on a certain machine, had filed an application as inventors for a patent on the same machine, that interference proceedings had resulted, that, upon filing of affidavits by the parties as to dates of first drawings, the employees had not offered further evidence and the interference proceedings had been terminated and the former employee had procured his patent, did not as a matter of law require a finding that the employer was estopped to contend thereafter that the former employee had invented the machine during his employment and that under the terms of his employment the employer was entitled to an assignment of his patent.

On a bill in equity disclosing ground for relief by an injunction only against exploiting a certain edge setting machine for wood heels invented by the defendant, a former employee of the plaintiff, the decree improperly included an additional injunction, in accordance with a prayer therefor, against exploiting "any invention, device, improvement, machine or attachment for setting the edges or breasts of heels for shoes."

BILL IN EQUITY, filed in the Superior Court on February 19, 1941, against Oscar L. Lawson and Lawson-Porter Shoe Machinery Corporation.

The suit previously was before this court when a report by *Greenhalge*, J., was dismissed as appears in 315 Mass. 127. Further proceedings in the Superior Court are described in the opinion.

*L. Withington,* (*L. G. Miller* with him,) for the defendants.
*H. D. Linscott,* for the plaintiff.

RONAN, J.   The plaintiff manufactures an automatic wood heel edge setting machine known as the Howard machine upon which it holds a patent, and leases the machines under license contracts to wood heel manufacturers.

It services these machines, supplies parts and receives a royalty for their use. The bill alleges that the defendant Lawson while in the plaintiff's employment had invented an edge setting machine for wood heels, which on account of the nature and terms of his employment belongs to the plaintiff; that Lawson had applied for a patent for his invention; and that he had assigned his rights in the application to the defendant Lawson-Porter Shoe Machinery Corporation which, the plaintiff alleged, was organized to develop, manufacture and lease said machine in competition with the plaintiff's machine. The bill seeks an assignment from the defendants of the application for letters patent, an injunction prohibiting the manufacturing, selling or leasing of the machine by the corporate defendant, an accounting and damages. Since the filing of the bill, Lawson has died and the administrators of his estate have been substituted for him. Letters patent have also been issued on the machine and are now held by the corporate defendant, which has developed and manufactured the machine and has distributed it to the makers of wood heels. By agreement of the parties and with the assent of the judge, the only question presented was the right of the plaintiff to an assignment of the patent, and if such right was established then the matter of an accounting and damages was to be later determined. After rescript was sent down, *National Development Co.* v. *Gray,* 315 Mass. 127, further proceedings were had in the Superior Court. The judge ordered that a decree be entered in conformity with the third and fourth prayers of the bill, which in substance sought to require the defendants to assign the patent to the plaintiff and to enjoin them from manufacturing, selling, leasing or using edge setting machines embodying the patented invention, and in accordance with the fifth prayer, which sought to enjoin them from using "any invention, device, improvement, machine or attachment for setting the edges or breasts of heels for shoes." The judge then reported the correctness of his action in ordering the decree.

The plaintiff's wood heel edge setting machine was invented by one Howard in 1929, who assigned the patent to

the plaintiff, which was organized to develop the patent. The plaintiff made a five year contract with the Pope Machinery Corporation (hereinafter called Pope) by which the latter built the machines, put them out on leases, supplied parts and serviced the machines, and received a rental or royalty, a portion of which it paid over to the plaintiff. Difficulties had arisen between the plaintiff and the Pope concern, and it seemed likely in the summer of 1933 that the contract with Pope would not be renewed upon its expiration in January, 1934. The plaintiff anticipated that Pope would not turn over the plans, drawings and parts, and that, if the plaintiff decided not to renew the Pope contract but to manufacture its own machines, it would be necessary to make drawings of the separate parts of the machine, make patterns for the drawings, make or have the parts made and assemble the machines. This could be done only by studying the existing machines and the Howard patent.

Lawson had been employed prior to 1927 as a draftsman in an experimental machine shop maintained by the A. E. Little Company, and had worked on the Howard machine and had made some drawings for the patent application. He left the employ of the A. E. Little Company in 1927, and became an employee of the United Shoe Machinery Corporation as an inventor. His employment there terminated in September, 1932. He then worked on inventions for one Matson until Matson went out of business in July, 1933. Sometime thereafter, in 1933, Lawson became an employee of the plaintiff. Little, who owned all the stock of the plaintiff, testified that after a series of conversations with Lawson beginning in August or September, 1933, he hired Lawson on December 26, 1933; that Pope would not return the plaintiff's drawings; that he told Lawson that he needed a man to make complete drawings of the machine, and all its parts; that he wanted that done first "and then — as a draftsman-inventor, and if we decide to install a shop of our own, supervise the work of making the parts, and we shall expect — I want you to be able to carry out any — willing to carry out any suggestions I make for other things,

and we want an understanding that all inventions or all ideas talked over" become the property of the plaintiff. He told Lawson that his duties would be those of a designer, inventor, supervisor, and that he was to carry out Little's suggestions as far as he could. Lawson said that he understood exactly what Little wanted and that he was "willing to come under those arrangements." He entered the employment of the plaintiff. Lawson studied the plaintiff's machines which were in use in the wood heel factories, made drawings of the parts, had the parts made and assembled the machines. The plaintiff began to service the machines in these factories. Lawson then spent most of his time making drawings and experimenting on improvements on the plaintiff's machine and on improvements on machinery unrelated to wood heels. Little and Liberty, an employee of the plaintiff, would tell Lawson what the trade required and ask him to develop something to take care of that requirement. Lawson in the course of his experimental work made three inventions upon which he secured patents and assigned them to the plaintiff. One was a patent for a heel attaching machine, the second a patent for an edge setting iron which was an improvement on the plaintiff's edge setting machine, and the third an edge setting machine. Applications for two other patents were assigned to the plaintiff but no patents were issued.

The manufacture, leasing and servicing of the edge setting machine and the supplying of parts were practically all the business that the plaintiff did. It was desirable, therefore, that the plaintiff keep its machine up to date. After a wood heel is fashioned, a thin piece of leather called a top lift is attached to the bottom of the heel. Edge setting consists in finishing and polishing the round edge or periphery of this top lift and in rolling in the joint, making the surfaces of the heel and the edge of the top lift smooth and continuous. This work was done by the plaintiff's machine by rotating and oscillating the heel against a heated iron. The plaintiff's machine did not set or polish the straight edge or breast of the top lift. When the machine was invented, most of the wood heels were of the "Louis" type

and it was not necessary to set the breast, for shoe manufacturers usually polished the breast in bottom-finishing the shoe. Cuban style heels were coming into greater use in 1935 and 1936. These heels were lower and broader than the Louis style. Little and Liberty saw the necessity for an edge setting machine that would set the breasts of Cuban heels. Both of them talked with Lawson in 1936 and 1937. Little told him that he thought that a machine could be made where the iron would travel around the heel and Lawson said it might be possible, but after he made some drawings he reported that he saw no way of heating a travelling iron. Little then suggested to Lawson the possibility of putting an attachment on the present machine for setting the breasts of the heels. Lawson worked on this suggestion, but there was no evidence that he ever subsequently invented such an attachment. He left the plaintiff's employment on August 28, 1937. It thereafter appeared that Lawson while in the plaintiff's employment had prepared a drawing at his home showing an edge setting machine designed to operate by having the iron rotate around the heel. This drawing was dated May 21, 1937, and served as a basis for the construction of such a machine and the issuance of the patent therefor which was assigned to the defendant corporation.

The judge found that there was no express contract that Lawson should assign any patents, nor was he satisfied that Lawson was expressly employed as an inventor, but he found that it was understood that Lawson should study improvements and developments for the machine and that patentable inventions might result from the work that he was to do or the ideas that he might conceive; that Lawson, while employed for the purpose, among others, of developing and perfecting the plaintiff's machine and if possible of combining with the operation of setting the periphery of the top lift the further operation of setting the breast of the top lift, conceived an idea for such a combination, and on his own time so far perfected it as to interest others to promise financial aid; and that this was accomplished by him before he left the plaintiff's employment and when he knew that the

contemplated machine, if perfected, would compete with the plaintiff's machine and might destroy the plaintiff's business.

The principal contention of the defendants is that Lawson was employed as a mechanic draftsman and superintendent and that his general employment in these capacities would not support any implied obligation to make inventions and to assign the patents therefor to the plaintiff.

One by merely entering an employment requiring the performance of services of a noninventive nature does not lose his rights to any inventions that he may make during the employment, although the employment may have afforded the opportunity or occasion for the conception of an idea which may lead to a patent and the rendition of services in the course of his employment may have so enhanced his mechanical skill, scientific knowledge and inventive faculties as to enable him to develop and perfect the idea into a patentable article, and this is true even if the patent is for an improvement upon a device or process used by the employer or is of such great practical value as to supersede the devices or processes with which the employee became familiar during his employment. Public policy favors the exercise by an individual of his inventive powers and seeks to stimulate the exertion of such powers by granting him the exclusive use and enjoyment of the fruits of his endeavors for the period of seventeen years. The law looks upon an invention as the property of the one who conceived, developed and perfected it, and establishes, protects and enforces the inventor's rights in his invention unless he has contracted away those rights. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182. *American Stay Co.* v. *Delaney*, 211 Mass. 229. *Manton-Gaulin Manuf. Co. Inc.* v. *Colony*, 255 Mass. 194. *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277. *George C. Miller & Co. Inc.* v. *Beagen*, 293 Mass. 54. *Hapgood* v. *Hewitt*, 119 U. S. 226. *Dalzell* v. *Dueber Watch Case Manuf. Co.* 149 U. S. 315. *United States* v. *Dubilier Condenser Corp.* 289 U. S. 178. *Pressed Steel Car Co.* v. *Hansen*, 137 Fed. 403. *State Board of Education* v. *Bourne*, 150 Fla. 323. *Gear Grinding Machine Co.* v. *Stuber*, 282 Mich. 455.

The discovery of an invention by an employee, whose duties to his employer do not require him to make any inventions, during the course of his employment through the use of the employer's equipment, materials and labor does not deprive the employee of his invention although the employer has a shop right in the invention which gives him a nonexclusive irrevocable license to use the invention. *M'Clurg* v. *Kingsland*, 1 How. 202. *McAleer* v. *United States*, 150 U. S. 424. *Gill* v. *United States*, 160 U. S. 426. *Monsanto Chemical Works* v. *Jaeger*, 31 Fed. (2d) 188. *Bowers* v. *Woodman*, 59 Fed. (2d) 797. *Barton* v. *Nevada Consolidated Copper Co.* 71 Fed. (2d) 381.

One may be hired for the specific purpose of making a particular invention or a series of inventions in some special branch of a business. The employee is ordinarily paid wages while he is engaged in preparing drawings, making researches, conducting experiments and performing whatever other things he deems necessary to accomplish the purpose of his employment. If the employee fails to reach his goal the loss falls upon the employer, but if he succeeds in accomplishing the prescribed result then the invention belongs to the employer even though the terms of employment contain no express provision dealing with the ownership of whatever inventions may be developed. If the employer contemplates the discovery of an invention and enters into a contract with another to endeavor to make the invention for the benefit of the employer and the contract, construed in the light of the attending circumstances, shows that the employee must have reasonably understood that such inventions as resulted from his performance of the contract should belong to the employer, then the employee is under an implied obligation to assign any patents acquired by him for said inventions to his employer. *Solomons* v. *United States*, 137 U. S. 342. *Standard Parts Co.* v. *Peck*, 264 U. S. 52. *Magnetic Manuf. Co.* v. *Dings Magnetic Separator Co.* 16 Fed. (2d) 739. *Goodyear Tire & Rubber Co.* v. *Miller*, 22 Fed. (2d) 353. *Houghton* v. *United States*, 23 Fed. (2d) 386, affirming 20 Fed. (2d) 434. *St. Louis & O'Fallon Coal Co.* v. *Dinwiddie*, 53 Fed. (2d) 655, affirmed *Dinwiddie* v. *St. Louis & O'Fallon Coal Co.* 64 Fed.

(2d) 303. *Famous Players-Lasky Corp.* v. *Ewing*, 49 Cal. App. 676. *State* v. *Neal*, 152 Fla. 582. *Bryan & Co.* v. *Scurlock*, 184 Iowa, 378. *Parker Rust-Proof Co.* v. *Allen*, 231 Mich. 69. *Air Reduction Co. Inc.* v. *Walker*, 118 Misc. (N. Y.) 827. *Quaker State Oil Refining Co.* v. *Talbot*, 315 Penn. St. 517. Am. Law Inst. Restatement: Agency, § 397, comment a.

Even though Lawson was not expressly employed as an inventor, he was hired for the specific purpose of developing and perfecting the plaintiff's edge setting machine. That apparently was Lawson's principal work after the plaintiff had succeeded in building its own machines and putting them on the market. Little and Liberty knew that the change in the style of wooden heels from the Louis to the Cuban type would create a demand by the wood heel manufacturers for an edge setting machine that would set the breast of the Cuban heel. Lawson attempted to work out an attachment for the plaintiff's machine that would set the breast, and also attempted to work out a machine that would accomplish this by having the iron travel around the heel. He reported to Little that both propositions were not feasible. Lawson had previously assigned to the plaintiff another improvement on the machine which he had invented. If Lawson succeeded in increasing the efficiency of the plaintiff's machine and in improving it so that it would set the breasts of Cuban heels, then the benefit of this work, the performance of which was one of the purposes for which he was hired and paid, would accrue to the plaintiff; and if an invention resulted from the execution of this work, then it could properly be found that an implied term of his employment was that he should assign to the plaintiff any patents that might result from this work. We think that the judge, in view of his finding as to the nature of Lawson's work and the granting of relief to the plaintiff, has in effect found that Lawson was under an implied obligation to assign the patent to the plaintiff and we draw the same inference from his findings. *Distasio* v. *Surrette Storage Battery Co.*, *ante*, 133, 135. It follows that an implied obligation to assign the patent to the plaintiff arose out of Lawson's employment.

*Aronson* v. *Orlov*, 228 Mass. 1, 5. *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158, 163. *Hoyt* v. *Corporon*, 268 Mass. 544, 549.

The judge found that Lawson conceived the idea of a machine which would set all the edges of the top lift by having an iron rotate about a stationary heel; that it appeared from Lawson's affidavit that "he invented his machine, made drawings of it and explained it to others in May, 1937"; that he completed his drawing on June 30, 1937, and showed the drawing to a patent attorney; that neither the idea nor the drawing was developed completely enough on August 20, 1937, to permit the construction of the machine; and that the idea for the construction of the new machine at the time Lawson left the plaintiff's employment on August 28, 1937, "was sufficiently definite in his mind and in the minds of others that it was workable and practical and capable of development to make it possible to secure financial backing for its development." We think these findings bring the case within the decisions last cited if Lawson may be said to have made the invention while in the plaintiff's employment.

The defendants contend that Lawson had not made any invention up to the time he quit his employment. No new machine had been constructed or put in operation at that time, but he had worked at his home and prepared a drawing of the proposed machine. Of course there is a distinction between the conception of an idea and the reduction of the idea into practice. The idea is only the starting point, and it does not become an invention until it is developed and perfected and becomes embodied in some tangible form which becomes some novel and useful device or process. *Lamson* v. *Martin*, 159 Mass. 557. *T. H. Symington Co.* v. *National Malleable Castings Co.* 250 U. S. 383. *United States* v. *Dubilier Condenser Corp.* 289 U. S. 178. Lawson had progressed far beyond a mere mental concept of the new machine. He had prepared a drawing which was sufficient to satisfy his own patent attorney and the attorney of Porter that it would not be an infringement of the plaintiff's machine and to induce Porter to invest in the project

and to form a corporation giving Lawson one half of the stock for an assignment of the patent. Even though the drawing was prepared in his own home, we think it came within the scope of his employment by the plaintiff and that it belonged to the plaintiff no less than if the drawing was made at the plaintiff's shop. *Toledo Machine & Tool Co.* v. *Byerlein,* 9 Fed. (2d) 279. *United States* v. *Houghton,* 20 Fed. (2d) 434, 438–439, affirmed *Houghton* v. *United States,* 23 Fed. (2d) 386. *Crown Cork & Seal Co. Inc.* v. *Fankhanel,* 49 Fed. Sup. 611. We think that the idea had crystallized into such definite form by the time Lawson left the plaintiff's employ that he and those with whom he spoke concerning the new machine knew in a general way the principles governing its operation and its probable practical value. Indeed, that is the gist of the affidavit which Lawson filed in the interference proceedings by which he established priority for his invention. It is plain from the evidence and the findings of the judge, none of which can be said to be plainly wrong, that the drawing was the nucleus from which the machine emerged; that whatever Lawson accomplished up to the time he quit his employment belonged to the plaintiff; that the defendant corporation took an assignment of the patent with notice of the plaintiff's rights; that the activity of Lawson in reference to the new machine constituted a breach of his contract of employment with the plaintiff; and that the latter was entitled to the patent.

The defendants make various other contentions which may be briefly discussed. When Lawson left the employment of the United Shoe Machinery Corporation in September, 1932, he was restricted by a contract made with that company from making any inventions of shoe machinery for others within the period of two years after he quit his employment with the company. The defendants urge that the contract asserted by the plaintiff to have been made with Lawson in 1933 was illegal as it was a breach, as both Lawson and the plaintiff knew, of Lawson's contract with the United Shoe Machinery Corporation. The short answer to this contention is that illegality is not pleaded by the defendants and the illegality was not of such a nature that the court of

its own motion was required to act and to bar relief. *Barsky* v. *Hansen*, 311 Mass. 14, 17. *Gleason* v. *Mann*, 312 Mass. 420, 422. Moreover, the invention was not discovered by Lawson until more than five years after he ceased to work for the United Shoe Machinery Corporation.

We find nothing in the record indicating any error in the finding that the plaintiff was not guilty of laches. *Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288, 291. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 301.

The defendants finally contend that the plaintiff, having previously contended that two of its employees, Bratt and Liberty, had invented the new machine, is estopped from contending that it was invented by Lawson. Lawson filed an application for a patent on March 16, 1938, and Bratt and Liberty filed their applications on January 12, 1939. The patent office issued a declaration of interference in reference to the two edge setting machines mentioned in the applications. The question then was one of priority between rival inventors. Bratt and Liberty filed a preliminary statement giving the date of their first drawing as July 1, 1937, but Lawson filed an affidavit giving the date as to when he made drawings and disclosed the invention to others as May 21, 1937. After this affidavit was filed, Bratt and Liberty offered no other evidence in the interference proceedings which then terminated on September 8, 1941, and Lawson was granted a patent on June 16, 1942. The evidence would justify a finding that the plaintiff never knew that Lawson had invented the machine while he was in its employ or at a date prior to that urged by Bratt and Liberty as the time they made the invention. The judge could find that the plaintiff was ignorant of the date of Lawson's invention, and did not mislead the defendants or induce them to change their positions. The defendants knew from the beginning when Lawson discovered the invention. One who has been shown to have mistaken his remedy, when facts in possession of a defendant are disclosed, is not thereby barred from availing himself of the proper remedy. The question of estoppel is ordinarily a question of fact, and the finding

that the plaintiff was not estopped from maintaining the present bill cannot be reversed when not shown to be plainly wrong. *Butler* v. *Hildreth*, 5 Met. 49, 51. *Doucette* v. *Baldwin*, 194 Mass. 131, 135. *Furber* v. *Dane*, 204 Mass. 412, 415. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association*, 211 Mass. 398, 402.. *Jennings* v. *Wall*, 217 Mass. 278, 281. *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, 291. *Augello* v. *Hanover Trust Co.* 253 Mass. 160, 167. *Sheehan* v. *Commercial Travelers Mutual Accident Association*, 283 Mass. 543, 551. *Cleaveland* v. *Malden Savings Bank*, 291 Mass. 295, 298. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 175.

The decree ordered, in so far as it would grant relief under the fifth prayer of the bill, enjoining the defendants "from manufacturing, marketing, selling, leasing, renting or in any way exploiting any invention, device, improvement, machine or attachment for setting the edges or breasts of heels for shoes," was too broad and was beyond the scope of the bill. *Pickard* v. *Clancy*, 225 Mass. 89. *Matter of Lyon*, 301 Mass. 30. *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172. The order must be modified by striking out the granting of any relief under the fifth prayer of the bill and as modified must be affirmed.

*Ordered accordingly.*