THERESA MADONNA *vs.* TRUSTEES OF THE UNIVERSITY OF
MASSACHUSETTS.

No. 90-P-1151.

Suffolk. February 18, 1992. - June 22, 1992.

Present: DREBEN, KASS, & GREENBERG, JJ.

*Contract*, Employment. *Employment*, Termination. *University of
Massachusetts.*

Under the applicable policies and procedures relative to reappointment
under a renewable employment contract, the employer acted conform-
ably with the contract in declining to renew appointment to a particular
position, and the employee was not entitled, in the circumstances, to the
benefit of layoff policies and procedures that granted seniority rights.
[696-697]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 4, 1988.

The case was heard by *Guy Volterra*, J., on a motion for
summary judgement.

*Ruth A. Bourquin* for the plaintiff.
*Deirdre Heatwole* for the defendant.

KASS, J. After slightly more than four years on the job as
the medical clinical director of nursing at the University of
Massachusetts Medical Center, Theresa Madonna's contract,
upon its expiration in October, 1987, was not renewed. The
reason for that decision was that Madonna's position was one
of ten management posts which the director of nursing was
eliminating so as to direct a greater share of her depart-
ment's fiscal resources to bedside patient care. Madonna
claims to have been laid off and that, under the layoff poli-
cies of the University of Massachusetts, she had seniority
rights entitling her to bump a clinical director of nursing
with fewer years in service.

After exhaustion of the University's grievance procedures, Madonna brought an action for reinstatement. Both sides moved for summary judgment, and a judge of the Superior Court allowed the University's motion on the ground that a layoff is a suspension from employment, whereas Madonna had completed her contractual term and her contract had not been renewed. We affirm the judgment in favor of the University, although we come to our conclusion by a somewhat different path. See *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979).

These are the salient and undisputed facts. Madonna's contract, at the time the decision not to renew was taken,[1] was a one-page affair, which said on the reverse side:

> "All employees of the University are employed pursuant to and subject to the policies and procedures of the Medical Center and the policies, rules and regulations adopted by the Board of Trustees of the University as amended, revised, or repealed from time to time, under the provisions of [G. L. c. 75], as amended from time to time."

That express and unambiguous language imported into Madonna's employment contract a personnel policy for professional nonacademic staff at the University of Massachusetts (Trustee Document T73-090), procedures dealing with reappointment and nonrenewal, and policies and procedures relating to layoffs at the University of Massachusetts Medical Center. See *Mendez* v. *Trustees of Boston Univ.*, 362 Mass. 353, 355 (1972); *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 13 (1988); Restatement (Second) of Contracts, §§ 132, 202(2) (1979). Cf. *Mullen* v. *Ludlow Hosp. Soc.*, post 968, 970 (1992). See also *Piper* v. *Trustees of Community College Dist. No. 514*, 99 Ill. App. 3d 752, 760 (1981) (contract includes employee manual issued by board of trustees when the contract states that it is subject to the by-laws, policies, rules, and regulations of the board);

---

[1]She had been employed under successive one-year contracts.

*McGinnis* v. *Honeywell, Inc.,* 110 N.M. 1, 5-6 (1990) (policies are incorporated into written contract when that document states that it is subject to published personnel policies); *DeSimone* v. *Skidmore College,* 159 A.D.2d 926, 928 (N.Y. 1990) (employment contract is subject to policies in employee handbook when the contract expressly incorporates the handbook).

Madonna's supervisor, Anne Bourgeois, the director of nursing, had, in the course of the grievance proceedings, provided to Madonna and to Keith Waterbrook, who was a vice chancellor of the University and the director of the University of Massachusetts Hospital, a memorandum which set out an explanation for the failure to renew Madonna's contract. There had been a loss of more than eighty staff nursing positions in a previous fiscal year, and there was a need to restore direct care nursing positions. Toward that end, Bourgeois proposed to decentralize management and to have nurse managers responsible for more than one unit and to eliminate the positions of associate director of nursing, surgical clinical director of nursing, and medical director of nursing (Madonna's job). In the aggregate, nine administrative jobs were to be pruned. The "reorganization/restructuring," the Bourgeois memorandum continued, "will unify the department, streamline the management of the department, improve morale, and provide the reallocation of funds for increasing patient care provider positions, thereby improving the quality of patient care." Two remaining clinical directors would assume some of the duties which had been assigned to the eliminated posts. One of the surviving clinical directors was junior to Madonna in tenure at the medical center.

Under the medical center's professional appointment procedure, reappointment was the "normal practice," i.e., a staff member who had served a full year would be reappointed, unless his or her performance was not up to snuff or the position had been reassigned or left unfunded for fiscal or programmatic reasons. Should any of those conditions come to pass, the supervisor of the staff member was to "recommend non-renewal." Both funding considerations and reas-

signment underlay the decision of the medical center not to offer Madonna a new contract.[2]

Parallel to the reappointment procedures was a complex set of policies and procedures for layoff of employees at the medical center, introduced by a statement that "The University of Massachusetts Medical Center is firmly committed to offering all employees stable employment . . . ." Madonna makes the argument that the reappointment procedures and layoff policies must be read together because not renewing an employment contract for financial and restructuring reasons is a layoff as that word is ordinarily understood. The employee is out of a job because of a constraint, rather than the inadequacies of the employee. To say, as the motion judge did, that not having her contract renewed is not the same as being laid off, Madonna suggests, is word chopping. The argument has some surface attraction. Compare, though, *Costello* v. *School Comm. of Chelsea*, 27 Mass. App. Ct. 822, 824-827 (1989), which, albeit in a different context, decided that nonrenewal of appointment was distinct from removal or discharge.

What defeats Madonna's theory is closer examination of the layoff policies and procedures. They do not apply to every alteration of the organization chart of a particular division, section, or bureau of the medical center. As we have seen, the professional appointment procedure requires nonrenewal of a contract when "[t]he position currently held by the staff member is to reassigned or left unfunded, either for fiscal or programmatic reasons."

Rather, the occasion for applying the layoff policies and procedures occurs when the nature of change or fiscal crisis pervades the entire medical center. The layoff policies and procedures are invoked "[w]hen there is a significant change in the Medical Center's operations or when economic conditions develop which provide inadequate revenues or funding to support all positions . . . ." In that event, the responsible vice chancellor is to notify the chancellor who, in turn, "shall

[2]Madonna received timely, i.e., at least six months, notice that her contract would not be renewed.

direct that the Vice Chancellors evaluate all departments of the Medical Center" and make recommendations for "programmatic/organizational changes, curtailment of expenses, or use of other resources which would address the issues of the Medical Center." Then the chancellor is to review and approve a preliminary list of employees scheduled for layoff, and the chancellor becomes responsible, acting under the direction of the president of the University, for implementation of the approved plan.

Nothing of so comprehensive a nature occurred in this case. There was neither evidence that a center-wide fiscal crisis existed which should have triggered the procedures for making staff reductions and layoffs, nor evidence of a center-wide staff reduction plan. There was not an occasion, therefore, for application of the layoff policies and procedures on which Madonna relies. As we read the personnel documents, rights contained in the layoff policies and procedures, e.g., seniority, apply only when a center-wide layoff plan is in operation. The nonrenewal policies can operate independently of a layoff plan; they provide for administrative changes, including staff reduction, within a particular department.

We conclude that the medical center, in declining to renew Madonna's contract, acted conformably with her employment contract, as fleshed out by the professional appointments procedures. She did not have the benefit of the layoff policies and procedures.

*Judgment affirmed.*